UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
                                                       )
ROBERT G. HAMMOND, et al.,           )
                                                       )
            Plaintiffs,                            )
                                                       )
      v.                                              )
                                                       )      Civil Action No. 01-2345 (PLF)
DIRK KEMPTHORNE, et al.,[1]            )
                                                       )
            Defendants.                        )
                                                       )
—————————————————————— )

OPINION AND ORDER

            On March 31, 2005, this Court issued an Order granting partial summary

judgment in favor of plaintiffs on Count 1 of their Complaint, in which plaintiffs alleged that the

Bureau of Land Management ("BLM") had improperly segmented its analysis of a refined

petroleum products pipeline (the "Williams Project") under the National Environmental Policy

Act, 42 U.S.C. §§ 4321 et seq. ("NEPA"), by failing to consider a proposed separate pipeline,

known as the Equilon or Shell Project, in the same Environmental Impact Statement ("EIS").

The Court ordered the BLM to prepare a supplemental EIS to evaluate why it was appropriate to

limit the scope of the EIS to the Williams Project.[2]  On April 14, 2005, both the federal

defendants and defendant-intervenor, Williams Petroleum Services, LLC ("Williams"),

(collectively, "defendants") filed a motion to alter or amend the judgment or, in the alternative,

———————————————

      [1]      Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Secretary of the
Interior Dirk Kempthorne has been substituted for former Secretary Gale A. Norton.

      [2]      It explained the reasoning underlying the March 31 Order in an Opinion issued on
May 13, 2005.  See Hammond v. Norton, 370 F. Supp. 2d 226 (D.D.C. 2005).

for relief from judgment, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil

Procedure.

## I.  BACKGROUND

The circumstances under which this action arose are fully discussed in Hammond

v. Norton, 370 F. Supp. 2d 226 (D.D.C. 2005).  Plaintiffs brought this case under NEPA and

other federal environmental statutes to challenge the decisions of the BLM and other federal

agencies in facilitating the construction of a refined petroleum products pipeline from

Bloomfield, New Mexico to Salt Lake City, Utah.  Primarily at issue is the relationship between

the proposed Bloomfield to Salt Lake City pipeline, known as the Williams Project, and another

proposed pipeline set to run from Odessa, Texas to Bloomfield.  The proponent of the Odessa to

Bloomfield project, Equilon Pipeline, LLC ("Equilon"), was originally partnered with Williams

in a joint venture to construct a single pipeline encompassing both of the proposed segments and

running all the way from West Texas to Salt Lake City.

When the BLM, the agency primarily responsible for reviewing applications for

rights-of-way for utility corridors across federal lands, made it clear to Williams and Equilon

that, for purposes of NEPA environmental review, it would consider both the Williams and

Equilon pipelines as a single project, rather than two separate endeavors, Williams and Equilon

terminated the joint venture and applied separately for rights-of-way to construct their respective

pipelines across federal lands.  BLM ultimately granted Williams' application for a right-of-way

after preparing a final environmental impact statement ("FEIS") that did not address the

environmental impacts of the proposed Equilon pipeline.

Plaintiffs filed this lawsuit in November of 2001, raising a host of claims, the foremost of which was an assertion that the BLM improperly limited the scope of the Williams FEIS to exclude the Equilon pipeline.  In March of 2003, defendants filed individual cross-motions for partial summary judgment.  The Court's March 31, 2005 Order granted summary judgment for defendants on all but one count of the complaint, Count 1.  As the Court explained in its subsequent Opinion, in Count 1 plaintiffs asserted that the BLM violated NEPA by failing to evaluate the impact of the Williams and Equilon projects in a single EIS.  The issue the Court focused on in determining whether the EIS had been improperly segmented to avoid consideration of connected actions was whether the Williams Project  "had substantial independent utility."  Hammond v. Norton, 370 F. Supp. 2d at 247-54; see Taxpayers Watchdog v. Stanley, 819 F.2d 294, 299 (D.C. Cir. 1987) (citing Piedmont Heights Civic Club v. Moreland, 637 F.2d 430, 439 (5th Cir. 1981)).  This inquiry turned upon whether the Williams Project would have adequate petroleum supply to serve a significant purpose even if a second related project was not built.  Hammond v. Norton, 370 F. Supp. 2d at 247-54 (citing Coalition on Sensible Transportation v. Dole, 826 F.2d 60, 69 (D.C. Cir. 1987)).  The Court concluded that BLM acted arbitrarily and capriciously in concluding that the Williams pipeline had independent utility and that the Equilon project was not a connected action.  It therefore ordered that the federal defendants prepare a supplemental EIS "addressing only the issue of whether the Williams and Equilon pipeline projects are connected actions under 40 C.F.R. § 1508.25(a)(1)."  March 31, 2005 Order at 2.

On April 14, 2005, the federal defendants and defendant-intervenor Williams filed separate motions to alter or amend the judgment or, in the alternative, for relief from judgment,

pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure.  These motions are

based on the BLM's April 11, 2005 discovery that the Shell Pipeline Company, Equilon's

successor in interest, withdrew its application for the Equilon project right-of-way in January

2005.  See Federal Defendants' Motion to Alter or Amend Judgment or, in the Alternative, for

Relief from Judgment ("Fed. Def.'s Motion") at 3; Statement of Points and Authorities in

Support of Defendant-Intervenor's Motion to Alter or Amend Judgment ("Def.-Intervenor's

Statement") at 4.  According to the BLM, its New Mexico and Utah offices are separate state

offices with separate administrative boundaries and are under the supervision of different State

Directors who have delegated authority from the Secretary.  Fed. Def.'s Motion at 3.  The BLM

did not know that the Equilon Project had been withdrawn in January 2005 because its New

Mexico office did not communicate to its Utah office that the Equilon right-of-way application

had been withdrawn.  Id. at 3-4.  Not until after this Court issued its Order on March 31, 2005 did

Mark Mackiewicz, the BLM's project manager for the Williams Project in Utah, contact the New

Mexico office of BLM to determine the status of the Equilon Project, whereupon Mackiewicz

found that Shell had withdrawn its application for a right-of-way for the Equilon Project and that

the Project no longer existed.  Id.; see Declaration of Mark Mackiewicz, Exh. A to Fed. Def.'d

Motion ("Mackiewicz Decl.") ¶¶ 3, 3.[3]  Once Mr. Mackiewicz learned of this new development,

he alerted the Department of Justice attorney assigned to this case.  Mackiewicz Decl. ¶ 3.  The

BLM's Alburquerque Field Office confirmed the withdrawal of the right-of-way application via a

letter to Shell on January 6, 2005.  Id.

---

[3]        There are two separate paragraphs inadvertently numbered "3" in the Mackiewicz
Declaration.

## II.  DISCUSSION

Motions to alter or amend a judgment under Rule 59(e) "are not to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." Independent Petroleum Ass'n of America v. Babbitt, 178 F.R.D. 323, 324 (D.D.C. 1998) (citing U.S. v. Western Electric Co., Inc., 690 F. Supp. 22, 25 (D.D.C. 1988)).  A Rule 59(e) motion will not be granted unless there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing National Trust v. Dep't of State, 834 F. Supp. 453, 455 (D.D.C. 1993), aff'd in part and rev'd in part on other grounds sub nom, Sheridan Kalorama Historical Ass'n v. Christopher, 49 F.3d 750 (D.C. Cir. 1995)).  As for Rule 60(b), it provides in pertinent part that "upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [where] . . . it is no longer equitable that the judgment should have prospective application; or . . . [for] any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b).  For a judgment to no longer be equitable, one must identify a "significant change in circumstances" justifying modification. Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 383 (1992).

### A. Effect of Withdrawal of Equilon Project on Pending Motions

Defendants argue that the Court should amend the judgment entered on March 31, 2005 because: (1) newly discovered evidence shows that carrying out the Court's Order would result in manifest injustice; (2) the relief ordered by the Court is moot; and (3) the preparation of

5

separate EISs for the Williams and Equilon projects was appropriate in the first place.  Plaintiffs

disagree with all of these assertions.  In addition, they argue that under the Administrative

Procedure Act, 5 U.S.C. § 706, the validity of the BLM's Record of Decision is to be adjudicated

on the basis of the record developed by the agency at the time it issued its decision, not based on

developments that took place after the administrative record was closed.

       Defendants' primary argument is that Shell has withdrawn the Equilon Project

and it would be manifestly unjust under Rule 59(e) to require the BLM to evaluate a non-existent

project.  <u>See</u> Federal Defendants' Sur-Reply in Support of Motion to Alter or Amend Judgment

or in the Alternative for Relief from Judgment ("Fed. Def.'s Sur-Reply") at 2-4; Def.-

Intervenor's Statement at 5.  In addition, defendants argue that the relief ordered by the Court –

the preparation of a supplemental EIS evaluating the issue of whether the Williams and Equilon

pipeline projects are connected actions – is moot because it would serve no purpose for the Court

to order the BLM to evaluate a project that has been terminated.  Fed. Def.'s Sur-Reply at 4; <u>see</u>

<u>also</u> Federal Defendants' Reply in Support of Motion to Alter or Amend Judgment or, in the

Alternative, for Relief from Judgment ("Fed. Def.'s Reply") at 6-8.

       The Court agrees with the defendants that the significant change in factual

circumstances warrants altering the remedy for BLM's failure to comply with NEPA, but it

disagrees with the proposition that the matter is now moot.   In its May 13, 2005 Opinion, the

Court explained that actions are "connected" or "closely related" if they "(i) Automatically

trigger other actions which may require environmental impact statements; (ii) Cannot or will not

proceed unless other actions are taken previously or simultaneously; [or] (iii) Are interdependent

parts of a larger action and depend on the larger action for their justification."  <u>Hammond v.</u>

Norton, 370 F. Supp. 2d at 247 (citing 40 C.F.R. § 1508.25(a)(1)).  Shell's withdrawal of its

right-of-way application for the Equilon Project does not change the uncertainty as to Williams'

petroleum supply arrangements in Bloomfield.  A substantial question still remains as to whether

the construction of the Williams Project will automatically trigger other actions.

Nevertheless, the Court agrees with the defendants that it would be manifestly

unjust to require the BLM to conduct a full supplemental EIS evaluating the independent utility

of the Williams Project in relation to a non-existent project.  See Norton v. Southern Utah

Wilderness Alliance, 124 S. Ct. 2373, 2384-85 (2005) (supplementation is necessary only if

"there remains 'major Federal actio[n]' to occur") (quoting Marsh v. Oregon Natural Res.

Council, 490 U.S. 360, 374 (1989)).  A more appropriate remedy, given the changed

circumstances, is to remand this matter to the BLM to address the remaining deficiencies in the

FEIS namely, the failure of BLM to make thorough and factually supportable findings with

regard to the independent utility of the Williams Project.  If the Williams Project does in fact

have independent utility, the BLM must substantiate that fact with record evidence, the existence

of reasonably certain alternative petroleum supply sources in Bloomfield, and other

circumstances indicating with reasonable clarity that the Williams pipeline will not automatically

trigger another pipeline project.

## B. The Parties' Other Arguments

Having found that the defendants are entitled to an alteration of the remedy, the

Court now briefly addresses the other arguments advanced by the parties, all of which are

without merit.

First, the federal defendants contest the Court's conclusion in its May 13 Opinion that actions that are similar or connected must be considered together in a single EIS.  Fed. Def.'s Sur-Reply at 5.  They agree that the relevant NEPA regulation states that such actions "should" be considered in the same EIS, but argue that the regulation does not establish a mandatory requirement that the agency do so in all cases.  Id. (citing 40 C.F.R. § 1508.25(a)(1)).  The defendants further contend that the Court misinterpreted the holding of the D.C. Circuit in Taxpayers Watchdog, Inc. v. Stanley, and that the key question in determining whether an agency has improperly segmented its analysis is "whether it has divided a single action into smaller actions with less impact in order to avoid preparation of an EIS."  Id. (citing Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d at 298 and 40 C.F.R. § 1508.27(b)(7)).

Defendants are attempting to relitigate an issue they already have lost.  The law is clear that a "Rule 59(e) motion is not a second opportunity to present argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier."  Dorocon, Inc. v. Burke, No. 02-2556, 2005 U.S. Dist. LEXIS 36201, at *11 (D.D.C. Dec. 16, 2005) (quoting W.C. & A.N. Miller Cos. v. United States, 173 F.R.D. 1, 3 (D.D.C. 1997)); see also Independent Petroleum Ass'n of America v. Babbitt, 178 F.R.D. at 324; New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995) ("Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled.").  The Court stands by its interpretation of the NEPA regulations and the case law, and will not reconsider them.

Plaintiffs raise two arguments against reconsideration of the Court's May 31, 2005 Order:  First, they argue that Shell's alleged withdrawal of its application for a right of way

8

in New Mexico is simply part of a pattern of collusive conduct between Shell, the BLM and Williams aimed at circumventing the requirements of NEPA.  See Statement of Points and Authorities in Opposition to Motion of Federal Defendants and Defendant-Intervenor Williams Pipeline Company, LLC to Alter or Amend Judgment ("Pl.'s Statement") at 8-14.  In support of their argument, plaintiffs cite to the BLM's decisions regarding the pipeline proposals at issue in this case, see id. at 8-14, and to an e-mail that a Shell Pipeline Company official sent to Edwin J. Singleton, the BLM District Manager in Albuquerque, and to Joe Jaramillo, an employee of the New Mexico BLM.  Id. at 14; Exhibit 1 to Federal Defendants' Motion to Alter or Amend Judgment or, in the Alternative, for Relief from Judgment ("Ex. 1").[4]  Plaintiffs argue that this e-mail indicates that Shell is not terminating its consideration of a New Mexico pipeline.  Id. Accordingly, plaintiffs urge the Court not to believe that the Shell project actually has been dropped.  Id. at 17-20.  The federal defendants argue that plaintiffs are making baseless assertions and that there is simply no evidence that the government proffered perjured information.  See Fed. Def.'s Reply at 2-6.

The Court agrees with the defendants.  Based on the record before it, the Court has already held that there was no bad faith during the NEPA process.  Hammond v. Norton, 370 F. Supp. 2d at 265-66;.  The Shell e-mail does not change anything.  The mere acknowledgment that any further pipeline project could benefit by availing itself of the information developed in the Equilon EIS does not establish that Shell in fact intends to initiate such a project.  It certainly

---

[4]        In the e-mail, the Shell official thanks the BLM for confirming that the "Shell Pipeline Company or a successor in interest may be able to 'tier off' of some of the existing studies (such as the cultural inventory and biological reports) that were developed for the [New Mexico pipeline] if the project is ever reactivated," with the caveat that "the use of the studies is dependent upon the specifics of the proponents' proposal."  Pl.'s Statement at 14 (citing Ex. 1).

does not establish, as plaintiffs would have the Court believe, that Shell is putting a multi-million dollar project on hold indefinitely merely to avoid having the BLM prepare a combined EIS.

Second, plaintiffs argue that under the APA the validity of the BLM's Record of Decision is to be adjudicated on the basis of the record developed by the agency at the time it issued its decision, not, as plaintiffs characterize it, on some "newly minted post hoc rationalization that the Federal Defendants and Williams formulate three years after the administrate record was closed." Supplemental Brief in Opposition to Defendants' Motion to Alter or Amend Judgment at 3. This argument, however, speaks only to the Court's consideration of whether the BLM violated NEPA in declining to prepare a combined EIS. The Court is not altering its decision to grant plaintiffs' motion for summary judgment with regard to Count 1, but only with respect to the appropriate remedy. Under NEPA, the Court retains its traditional equitable discretion to decide on an appropriate remedy based on a balance of the competing harms. See Anacostia Watershed Soc'y v. Babbitt, 875 F. Supp. 1, 3 (D.D.C. 1995).

III.  CONCLUSION

For the reasons stated above, the Court declines to amend its entry of summary judgment for plaintiffs on Count 1 of their amended complaint, but does find it appropriate to alter the remedy for the BLM's violation of NEPA. Accordingly, it is hereby

ORDERED that [130] defendant-intervenor Williams' motion to amend judgment to grant summary judgment for Williams on Count 1 is DENIED; it is

FURTHER ORDERED that [129] the federal defendants' motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the Court's Order of March 31, 2005 is VACATED only insofar as it directs the BLM to prepare a supplemental EIS; and it is

FURTHER ORDERED that this case is REMANDED to the Bureau of Land Management to address the limited deficiencies in the Final Environmental Impact Statement identified by the Court, specifically, the failure of the Bureau of Land Management to make thorough and factually supportable findings with regard to the independent utility of the Williams Project.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: August 29, 2006
_____

11